APPEAL,CLOSED,TYPE−C

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:24−cv−01810−LLA

MONTEFIORE MEDICAL CENTER v. KENNEDY
Assigned to: Judge Loren L. AliKhan
Related Cases: 1:25−cv−00180−LLA
1:25−cv−00627−LLA
1:25−cv−02139−LLA
1:25−cv−03772−LLA
1:25−cv−03949−LLA
1:25−cv−04092−LLA
1:25−cv−04134−LLA
1:25−cv−04135−LLA
1:25−cv−04136−LLA
1:25−cv−04133−LLA
1:25−cv−04182−LLA
1:25−cv−02900−LLA
1:24−cv−03602−LLA
1:25−cv−04325−LLA
1:25−cv−04475−LLA
1:25−cv−04524−LLA
1:26−cv−00084−LLA
1:26−cv−00148−LLA
1:24−cv−02991−LLA
1:26−cv−00461−LLA
1:26−cv−02348−LLA
1:26−cv−00588−LLA
1:26−cv−00704−LLA
1:26−cv−00747−LLA
1:26−cv−00858−LLA
1:26−cv−01058−LLA
1:26−cv−01066−LLA
1:26−cv−01167−LLA
1:26−cv−01187−LLA
1:26−cv−01323−LLA
1:26−cv−01374−LLA
1:26−cv−01620−LLA
1:26−cv−01654−LLA
1:26−cv−01729−LLA
1:26−cv−01816−LLA

Date Filed: 06/24/2024
Date Terminated: 08/28/2026
Jury Demand: None
Nature of Suit: 151 Contract: Recovery Medicare
Jurisdiction: U.S. Government Defendant

1:26−cv−02007−LLA
1:26−cv−02011−LLA
1:26−cv−02078−LLA
1:26−cv−02207−LLA
1:26−cv−02278−LLA

Cause: 42:1395 HHS: Adverse Reimbursement Review

**Plaintiff**

**MONTEFIORE MEDICAL CENTER** represented by **Stephanie A. Webster**
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 508−4859
Fax: (202) 508−4650
Email: stephanie.webster@ropesgray.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**XAVIER BECERRA**
*Secretary, United States Department of Health and Human Services*
*TERMINATED: 09/30/2025*

represented by **James O. Bickford**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305−7632
Fax: (202) 616−8470
Email: james.bickford@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter M. Bryce**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 616−8335
Fax: (202) 616−8470
Email: peter.bryce@usdoj.gov
*TERMINATED: 09/30/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cormac A. Early**
PUBLIC CITIZEN
1600 20th ST NW
Washington, DC 20009
202−588−7751
Email: cearly@citizen.org

*TERMINATED: 05/08/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT F. KENNEDY, JR.**
*Secretary, United States Department of Health and Human Services*

represented by **James O. Bickford**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2024 | 1 | COMPLAINT against MONTEFIORE MEDICAL CENTER ( Filing fee $ 405 receipt number ADCDC−10979476) filed by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons)(Webster, Stephanie) (Entered: 06/24/2024) |
| 06/24/2024 | 2 | NOTICE OF RELATED CASE by MONTEFIORE MEDICAL CENTER. Case related to Case No. 23−cv−2144. (Webster, Stephanie) (Entered: 06/24/2024) |
| 06/24/2024 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by MONTEFIORE MEDICAL CENTER (Webster, Stephanie) (Entered: 06/24/2024) |
| 06/24/2024 | | Case Assigned to Judge Loren L. AliKhan. (zmtm) (Entered: 06/24/2024) |
| 06/24/2024 | 4 | SUMMONS (3) Issued Electronically as to XAVIER BECERRA, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 06/24/2024) |
| 07/01/2024 | 5 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. XAVIER BECERRA served on 6/26/2024 (Webster, Stephanie) (Entered: 07/01/2024) |
| 07/01/2024 | 6 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 6/27/2024. (Webster, Stephanie) (Entered: 07/01/2024) |
| 07/01/2024 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/24/2024. Answer due for ALL FEDERAL DEFENDANTS by 8/23/2024. (Webster, Stephanie) (Entered: 07/01/2024) |
| 07/08/2024 | 8 | NOTICE of Appearance by Peter M. Bryce on behalf of XAVIER BECERRA (Bryce, Peter) (Entered: 07/08/2024) |
| 07/19/2024 | 9 | Consent MOTION for Extension of Time to File Answer *or Otherwise Respond to the Complaint* by XAVIER BECERRA. (Attachments: # 1 Text of Proposed Order)(Bryce, Peter) (Entered: 07/19/2024) |
| 07/22/2024 | | MINUTE ORDER: Upon consideration of Defendant's Consent Motion for Extension of Time to File Answer or Otherwise Respond to the Complaint 9 , it is hereby ORDERED that the motion is GRANTED, and that Defendant shall respond to Plaintiff's complaint on or before September 23, 2024. Signed by Judge Loren L. AliKhan on 7/22/2024. (lclla1) (Entered: 07/22/2024) |
| 07/22/2024 | | |

| | | |
|---|---|---|
| | | Set/Reset Deadlines/Hearings: Response to complaint due by 9/23/2024. (zcdw) (Entered: 07/22/2024) |
| 09/23/2024 | 10 | NOTICE of Appearance by Cormac A. Early on behalf of All Defendants (Early, Cormac) (Entered: 09/23/2024) |
| 09/23/2024 | 11 | ANSWER to Complaint by XAVIER BECERRA. (Attachments: # 1 Exhibit PRRB EJR Decision)(Early, Cormac) (Entered: 09/23/2024) |
| 09/27/2024 | 12 | ORDER directing the parties to meet and confer and file a joint proposed briefing schedule by October 18, 2024. See Order for details. Signed by Judge Loren L. AliKhan on 09/27/2024. (lclla1) (Entered: 09/27/2024) |
| 10/01/2024 | | Set/Reset Deadlines/Hearings: Joint Proposed Briefing Schedule due by 10/18/2024. (zcdw) (Entered: 10/01/2024) |
| 10/17/2024 | 13 | PROPOSED BRIEFING SCHEDULE *(Joint)* by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Text of Proposed Order)(Webster, Stephanie) (Entered: 10/17/2024) |
| 10/17/2024 | | MINUTE ORDER: Upon consideration of the parties' Joint Proposed Briefing Schedule 13 , it is hereby ORDERED that the following schedule shall govern summary judgment briefing in this case: (1) Defendant shall furnish the administrative record to Plaintiff and file a certified index of the administrative record on or before October 23, 2024; (2) Plaintiff shall file a motion for summary judgment on or before November 22, 2024; (3) Defendant shall file an opposition and cross−motion for summary judgment, if any, on or before January 30, 2025; (4) Plaintiff shall file a reply and opposition, if any, on or before March 20, 2025; (5) Defendant shall file a reply, if any, on or before May 8, 2025. Signed by Judge Loren L. AliKhan on 10/17/2024. (lclla1) (Entered: 10/17/2024) |
| 10/23/2024 | 14 | NOTICE *of Filing Certified Lists Under Local Rule 7(n)(1)* by XAVIER BECERRA (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Bryce, Peter) (Entered: 10/23/2024) |
| 11/14/2024 | 15 | MOTION to Continue *Postpone Briefing Pending Potential Consolidation* by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Text of Proposed Order)(Webster, Stephanie) Modified event on 11/15/2024 (znmw). (Entered: 11/14/2024) |
| 11/15/2024 | 16 | Memorandum in opposition to re 15 Motion to Continue *Pending Potential Consolidation* filed by XAVIER BECERRA. (Attachments: # 1 Text of Proposed Order)(Bryce, Peter) (Entered: 11/15/2024) |
| 11/18/2024 | 17 | REPLY to opposition to motion re 15 Motion to Continue *Postpone Briefing Pending Potential Consolidation* filed by MONTEFIORE MEDICAL CENTER. (Webster, Stephanie) (Entered: 11/18/2024) |
| 11/21/2024 | | MINUTE ORDER: Upon consideration of Plaintiff's motion to continue 15 , Defendant's opposition 16 , and Plaintiff's reply 17 , and pursuant to Federal Rule of Civil Procedure 6(b), it is hereby ordered that the motion is GRANTED and the summary judgment briefing schedule is VACATED. Defendant indicated in his opposition that he expected to file "a separate reply to plaintiff's response to the Montefiore 2 show cause order and... a separate stay motion... in that case," ECF No. 16, at 2, but no such filings have been docketed in that case, *see generally* D.D.C. No. 24−CV−2991. Because the court would benefit from understanding Defendant's position on how to proceed with the Montefiore cases and the anticipated deluge of |

| | | |
|---|---|---|
| | | related cases, *see In re Allina II−Type DSH Adjustment Cases*, D.D.C. No. 19−MC−190, it is further ORDERED that Defendant shall file any response to the show−cause order and any stay motion in D.D.C. No. 24−CV−2991 on or before November 27, 2024, Plaintiff shall file any reply to the show−cause order and opposition to any stay motion on or before December 3, 2024, and Defendant shall file any reply in support of his stay motion on or before December 6, 2024. Signed by Judge Loren L. AliKhan on 11/21/2024. (lclla1) (Entered: 11/21/2024) |
| 11/21/2024 | | ***Deadlines terminated; Set/Reset Deadlines: Deft Response to Show Cause due by 11/27/2024; Pltf Reply to Show Cause due by 12/3/2024; Deft Replies due by 12/6/2024. (mhp) (Entered: 11/22/2024) |
| 12/20/2024 | | MINUTE ORDER: Given the court's resolution of the motion to stay in *Montefiore Medical Center et al. v. Becerra*, No. 24−CV−2991, the parties are hereby ORDERED to meet and confer and file a joint proposed briefing schedule on or before January 3, 2025. Signed by Judge Loren L. AliKhan on 12/20/2024. (lclla1) (Entered: 12/20/2024) |
| 12/20/2024 | | Set/Reset Deadlines: Joint Proposed Briefing Schedule due by 1/3/2025. (mhp) (Entered: 12/20/2024) |
| 01/03/2025 | 18 | PROPOSED BRIEFING SCHEDULE by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Text of Proposed Order)(Webster, Stephanie) (Entered: 01/03/2025) |
| 01/06/2025 | | MINUTE ORDER: Upon consideration of the parties' Proposed Briefing Schedule 18 , it is hereby ORDERED that the following schedule shall govern summary judgment briefing in this case: (1) Plaintiff shall file a motion for summary judgment on or before January 27, 2025; (2) Defendant shall file an opposition and cross−motion for summary judgment, if any, on or before March 28, 2025; (3) Plaintiff shall file a reply and opposition, if any, on or before May 12, 2025; (4) Defendant shall file a reply, if any, on or before June 26, 2025. Signed by Judge Loren L. AliKhan on 01/06/2025. (lclla1) (Entered: 01/06/2025) |
| 01/06/2025 | | ***Deadlines terminated & Set/Reset Deadlines: Pltf's Summary Judgment motions due by 1/27/2025; Deft's Response (opposition) to Motion for Summary Judgment and Cross Motions due by 3/28/2025; Pltf's Reply (opposition) to Motion for Summary Judgment and Response to Cross Motions due by 5/12/2025; Deft's Reply to Cross Motions due by 6/26/2025. (mhp) (Entered: 01/06/2025) |
| 01/27/2025 | 19 | MOTION for Summary Judgment by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Webster, Stephanie) (Entered: 01/27/2025) |
| 03/24/2025 | 20 | Consent MOTION for Extension of Time to File Response/Reply *and to Modify the Briefing Schedule* by XAVIER BECERRA. (Attachments: # 1 Text of Proposed Order)(Bryce, Peter) (Entered: 03/24/2025) |
| 03/27/2025 | | MINUTE ORDER: Upon consideration of Defendant's consent motion to extend and modify the briefing schedule 20 , it is hereby ORDERED that the motion is GRANTED in part to the extent that the following schedule shall govern summary judgment briefing in this case: (1) Defendant shall file an opposition and cross−motion for summary judgment, if any, on or before April 15, 2025; (2) Plaintiff shall file a reply and opposition, if any, on or before June 17, 2025; and (3) Defendant shall file a reply, if any, on or before July 18, 2025. Signed by Judge Loren L. AliKhan on 03/27/2025. (lclla1) (Entered: 03/27/2025) |

| | | |
|---|---|---|
| 03/27/2025 | | ***Deadlines terminated & Set/Reset Deadlines: Deft's Response to Motion for Summary Judgment and Cross Motions due by 4/15/2025; Pltf's Reply to Motion for Summary Judgment and Response to Cross Motions due by 6/17/2025; Deft's Reply to Cross Motions due by 7/18/2025. (mhp) (Entered: 03/27/2025) |
| 04/11/2025 | 21 | Cross MOTION for Summary Judgment by XAVIER BECERRA. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Bryce, Peter) (Entered: 04/11/2025) |
| 04/11/2025 | 22 | Memorandum in opposition to re 19 Motion for Summary Judgment filed by XAVIER BECERRA. (Attachments: # 1 Text of Proposed Order)(Bryce, Peter) (Entered: 04/11/2025) |
| 05/08/2025 | 23 | NOTICE OF WITHDRAWAL OF APPEARANCE as to XAVIER BECERRA. Attorney Cormac A. Early terminated. (Early, Cormac) (Entered: 05/08/2025) |
| 06/17/2025 | 24 | Memorandum in opposition to re 21 Cross MOTION for Summary Judgment filed by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Text of Proposed Order)(Webster, Stephanie) (Entered: 06/17/2025) |
| 06/17/2025 | 25 | REPLY to opposition to motion re 19 Motion for Summary Judgment filed by MONTEFIORE MEDICAL CENTER. (Webster, Stephanie) (Entered: 06/17/2025) |
| 07/15/2025 | 26 | Unopposed MOTION for Extension of Time to File Response/Reply by XAVIER BECERRA. (Attachments: # 1 Text of Proposed Order)(Bryce, Peter) (Entered: 07/15/2025) |
| 07/17/2025 | | MINUTE ORDER: Upon consideration of Defendant's unopposed motion for an extension of time 26 , it is hereby ORDERED that the motion is GRANTED and Defendant shall file his reply on or before August 1, 2025. Signed by Judge Loren L. AliKhan on 07/17/2025. (lclla1) (Entered: 07/17/2025) |
| 07/28/2025 | 27 | ORDER of USCA re 19cv3481 (RC). ORDERED that 21−5192 remain in abeyance pending further order of the court. The parties are directed to file motions to govern future proceedings in this case within 14 days of the district courts disposition of Montefiore Medical Center v. Becerra, No. 24−cv−1810 (D.D.C.). The Clerk is directed to transmit a copy of this order to the district court in Montefiore. USCA Case Number 21−5192. (znmw) (Entered: 07/29/2025) |
| 08/01/2025 | 28 | REPLY to opposition to motion re 21 Motion for Summary Judgment filed by XAVIER BECERRA. (Bryce, Peter) (Entered: 08/01/2025) |
| 08/15/2025 | 29 | JOINT APPENDIX by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Exhibit Joint Appendix Vol. 1 (RR 1 − RR 264), # 2 Exhibit Joint Appendix Vol. 2 (RR 265 − RR 580), # 3 Exhibit Joint Appendix Vol. 3 (RR 589 − AR 330))(Webster, Stephanie) (Entered: 08/15/2025) |
| 09/30/2025 | 30 | NOTICE OF SUBSTITUTION OF COUNSEL by James O. Bickford on behalf of XAVIER BECERRA Substituting for attorney Peter M. Bryce (Bickford, James) (Entered: 09/30/2025) |
| 09/30/2025 | | MINUTE ORDER: It is hereby ORDERED that the Clerk of Court shall update the caption in this case to reflect that Defendant Robert F. Kennedy, Jr. is the sole named Defendant. Fed. R. Civ. P. 25(c). Signed by Judge Loren L. AliKhan on 09/30/2025. (lclla2) (Entered: 09/30/2025) |

| | | |
|---|---|---|
| 09/30/2025 | 31 | MEMORANDUM OPINION regarding Plaintiff's Motion for Summary Judgment 19 and Defendant's Cross−Motion for Summary Judgment 21 . See opinion for details. Signed by Judge Loren L. AliKhan on 09/30/2025. (lclla2) (Main Document 31 replaced on 10/1/2025)(mhp) (Entered: 09/30/2025) |
| 09/30/2025 | 32 | ORDER: For the reasons explained in the court's Memorandum Opinion 31 , it is hereby ORDERED that Plaintiff's Motion for Summary Judgment 19 is GRANTED and Defendant's Cross−Motion for Summary Judgment 21 is DENIED. It is further ORDERED that the parties shall submit a joint status report on or before October 7, 2025 with a proposed schedule for briefing on the proper remedy. See order for details. Signed by Judge Loren L. AliKhan on 09/30/2025. (lclla2) (Main Document 32 replaced on 9/30/2025) (mhp) (Entered: 09/30/2025) |
| 11/13/2025 | | MINUTE ORDER: In light of the restoration of appropriations to the federal government and the court's Standing Order 25−59, it is hereby ORDERED that the parties shall file a joint status report on or before December 1, 2025 with a proposed schedule for briefing on the proper remedy. Signed by Judge Loren L. AliKhan on 11/13/2025. (lclla2) (Entered: 11/13/2025) |
| 12/01/2025 | 33 | Joint STATUS REPORT by MONTEFIORE MEDICAL CENTER. (Attachments: # 1 Text of Proposed Order)(Webster, Stephanie) (Entered: 12/01/2025) |
| 12/03/2025 | | MINUTE ORDER: Upon consideration of the parties' Joint Status Report 33 , it is hereby ORDERED that the following schedule shall govern the supplemental briefing in this case: (1) Plaintiff shall file its opening brief on or before December 22, 2025; (2) Defendant shall file his response on or before January 23, 2026; and (3) Plaintiff shall file its reply on or before February 13, 2026. Plaintiff's opening brief and Defendant's response shall not exceed fifteen pages and Plaintiff's reply shall not exceed ten pages. Signed by Judge Loren L. AliKhan on 12/03/2025. (lclla2) (Entered: 12/03/2025) |
| 12/22/2025 | 34 | SUPPLEMENTAL MEMORANDUM to re 19 MOTION for Summary Judgment filed by MONTEFIORE MEDICAL CENTER. (Webster, Stephanie) (Entered: 12/22/2025) |
| 01/21/2026 | 35 | Consent MOTION for Extension of Time to File *Remedy Brief* by ROBERT F. KENNEDY, JR. (Attachments: # 1 Text of Proposed Order)(Bickford, James) (Entered: 01/21/2026) |
| 01/27/2026 | | MINUTE ORDER: Upon consideration of Defendant's Consent Motion for Extension of Time 35 , it is hereby ORDERED that the motion is GRANTED *nunc pro tunc* and Defendant shall file his response to Plaintiff's supplemental memorandum 34 on or before January 30, 2026 and Plaintiff shall file its reply on or before February 23, 2026. Signed by Judge Loren L. AliKhan on 1/27/2026. (lclla2) (Entered: 01/27/2026) |
| 01/30/2026 | 36 | SUPPLEMENTAL MEMORANDUM by ROBERT F. KENNEDY, JR. (Bickford, James) Modified event title on 2/2/2026 (znmw). (Entered: 01/30/2026) |
| 02/23/2026 | 37 | SUPPLEMENTAL MEMORANDUM to re 19 MOTION for Summary Judgment filed by MONTEFIORE MEDICAL CENTER. (Webster, Stephanie) (Entered: 02/23/2026) |
| 08/28/2026 | 38 | MEMORANDUM OPINION regarding the parties' supplemental briefing on the proper remedy 34 36 37 . Signed by Judge Loren L. AliKhan on 8/28/2026. (lclla2) (Entered: 08/28/2026) |
| 08/28/2026 | 39 | ORDER: For the reasons explained in the court's Memorandum Opinion 38 and the court's previous Memorandum Opinion 31 and Order 32 granting Plaintiff's Motion for |

| | | |
|---|---|---|
| | | Summary Judgment 19 and denying Defendant's Cross−Motion for Summary Judgment 21 , it is hereby ORDERED that judgment is ENTERED in Plaintiff's favor as to Count I and Count II of Plaintiff's Complaint 1 . This order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case. See order for details. Signed by Judge Loren L. AliKhan on 8/28/2026. (lclla2) (Entered: 08/28/2026) |
| 10/26/2026 | 40 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 39 Order,, by ROBERT F. KENNEDY, JR. Fee Status: No Fee Paid. (Bickford, James) (Entered: 10/26/2026) |
| 10/27/2026 | 41 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 39 Order,, by MONTEFIORE MEDICAL CENTER. Filing fee $ 605, receipt number ADCDC−12766727. Fee Status: Fee Paid. (Webster, Stephanie) (Entered: 10/27/2026) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MONTEFIORE MEDICAL CENTER,**<br><br>Plaintiff,<br><br>v.<br><br>**ROBERT F. KENNEDY, JR.,**<br>*in his official capacity as Secretary of Health and Human Services,*<br><br>Defendant. | Case No. 24-cv-1810 (LLA) |

**NOTICE OF APPEAL**

Please take notice that Defendant hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the final judgment entered on August 28, 2026, ECF No. 39.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Director

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: October 26, 2026

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MONTEFIORE MEDICAL CENTER,<br>*Plaintiff*,<br>v.<br>ROBERT F. KENNEDY, JR.,<br>*Defendant*. | Civil Action No. 24 - 1810 (LLA) |

**ORDER**

For the reasons explained in the court's Memorandum Opinion, ECF No. 38, and the court's previous Memorandum Opinion, ECF No. 31, and Order, ECF No. 32, granting Plaintiff's Motion for Summary Judgment, ECF No. 19, and denying Defendant's Cross-Motion for Summary Judgment, ECF No. 21, it is hereby **ORDERED** that judgment is **ENTERED** in Plaintiff's favor as to Count I and Count II of Plaintiff's Complaint, ECF No. 1. It is further **ORDERED** that the 2023 Rule is **SET ASIDE** as arbitrary and capricious and otherwise not in accordance with law. And it is further **ORDERED** that this case is **REMANDED** to Defendant for further proceedings consistent with the court's opinions.

This Order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case.

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: August 28, 2026

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MONTEFIORE MEDICAL CENTER,<br>*Plaintiff*,<br>v.<br>ROBERT F. KENNEDY, JR.,<br>*Defendant*. | Civil Action No. 24 - 1810 (LLA) |

**MEMORANDUM OPINION**

Plaintiff Montefiore Medical Center brings this action against Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, alleging that in 2023, the Department of Health and Human Services ("HHS") promulgated an impermissibly retroactive and procedurally invalid rule under the Medicare statute, 42 U.S.C. § 1395 *et seq.*, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* ECF No. 1. In the 2023 Rule, HHS interpreted a provision in the Medicare statute about how the agency calculates reimbursements owed to hospitals that serve disproportionately more low-income patients. In September 2025, the court held that the 2023 Rule is contrary to law and arbitrary and capricious. ECF No. 31. Accordingly, it granted Montefiore's motion for summary judgment and denied the Secretary's cross-motion for summary judgment. ECF Nos. 31, 32. The court then directed the parties to file supplemental briefing addressing whether vacatur of the 2023 Rule or a remand to the Secretary without vacatur is the appropriate remedy. ECF Nos. 32, 33; Dec. 3, 2025 Minute Order. The parties have briefed their positions on remedies. ECF Nos. 34, 36-37. For the reasons explained below, the court vacates the 2023 Rule and remands the matter to the Secretary.

## I. BACKGROUND

The court assumes the parties' familiarity with the statutory scheme governing Medicare and the various challenges to the payment scheme at issue here. *See* ECF No. 31, at 2-11. The court therefore recounts only the portions of the statutory and regulatory background and litigation history that are necessary to determine the appropriate remedy.

### A. Medicare's Disproportionate Share Hospital Adjustment

Two parts of the Medicare program are relevant here. Under Part A, HHS pays hospitals directly for services they provide to qualifying beneficiaries. 42 U.S.C. §§ 1395c to 1395i-6. Under Part C, an individual who is entitled to benefits under Part A may enroll in a privately administered Medicare Advantage program in lieu of using Part A benefits. *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424, 429 (2022); *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011); *see* 42 U.S.C. § 1395w-21(a)(1). One part of the payment structure for hospitals rendering services to Part A beneficiaries is the "disproportionate share hospital" ("DSH") adjustment, which provides "enhanced Medicare payments" to "hospitals serving an 'unusually high percentage of low-income patients.'" *Empire Health*, 597 U.S. at 429 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 150 (2013)).

To calculate an adjustment based on the low-income patients a hospital has served, HHS adds two fractions together: the Medicare fraction, which captures the "proportion of a hospital's Medicare patients who have low incomes," and the Medicaid fraction, which captures the "proportion of a hospital's patients who are not entitled to Medicare and have low incomes." *Id.* at 429-30. As a proxy for "low income" in the Medicare fraction, the statute uses entitlement to "supplemental security income" ("SSI") benefits. *Id.*; *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). SSI benefits are available to low-income individuals "who are aged, blind, or disabled regardless

of their insured status." *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (quoting *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). As a proxy for "low income" in the Medicaid fraction, the statute uses entitlement to the Medicaid program, which "provides health insurance to all low-income individuals, regardless of age or disability." *Empire Health*, 597 U.S. at 430; *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

The numerator in the Medicare fraction "is the number of [a] hospital's patient days for [a fiscal year] which were made up of patients who (for such days) were *entitled to benefits under* [*P*]*art A of* [*Medicare*] and were entitled to [SSI] benefits." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). The "denominator . . . is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under* [*Medicare*] [*P*]*art A*." *Id.* (emphasis added). Rather than calculate the patient days attributable to all Medicaid patients, the Medicaid fraction strips out those associated with "dually eligible" patients. Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 88 Fed. Reg. 37772, 37774 (June 9, 2023) (codified at 42 C.F.R. pt. 412) ("2023 Rule"). The numerator in the Medicaid fraction thus includes "the number of the hospital's patient days for [a fiscal year] which consist of patients who (for such days) were eligible for medical assistance under [Medicaid], *but who were not entitled to benefits under* [*P*]*art A of* [*Medicare*]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). And the denominator is "the total number of the hospital's patient days for such [fiscal year]." *Id.*

The Centers for Medicare and Medicaid Services ("CMS") is the HHS component responsible for administering the Medicare program. *Id.* § 1395kk; *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 291-92 (D.C. Cir. 2018). CMS contracts with a "fiscal intermediary"—known as a Medical Administrative Contractor ("MAC")—that initially calculates the sum of the two

fractions. 42 C.F.R. §§ 412.106(b)(4), 421.400 (2024). That sum—the "disproportionate patient percentage," 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi)—determines whether a hospital receives a DSH adjustment.

Upon calculating the combined fraction, the MAC issues a "notice of program reimbursement" ("NPR") that contains a "[p]rospective payment" detailing the "total amount of the payments due the hospital . . . for the cost reporting period covered by the notice." 42 C.F.R. § 405.1803. Providers seeking to contest their NPR must first do so before HHS's Provider Reimbursement Review Board ("PRRB"), which may affirm, modify, or reverse the MAC's cost report. 42 U.S.C. § 1395oo(d). The Secretary may, "on his own motion," alter the PRRB's decision. *Id.* § 1395oo(f)(1). A hospital can seek judicial review within sixty days of the PRRB's "final decision," although the statute also permits review if the PRRB determines that it lacks authority to resolve a "question of law or regulations relevant to the matters in controversy." *Id.*

### B. The Medicare Statute's Limitations on Retroactive Rulemaking

Generally, the Secretary is required to "prescribe such regulations as may be necessary to carry out the administration of the [Medicare] program[]." *Id.* § 1395hh(a)(1). But Congress has circumscribed that authority in several ways. First, the Secretary may "establish[] or change[] a substantive legal standard governing," among other things, "the payment for services," only by promulgating a regulation to that effect. *Id.* § 1395hh(a)(2). If any regulation "includes a provision that is not a logical outgrowth of a previously published notice of proposed rulemaking or interim final rule, such provision shall be treated as a proposed regulation and shall not take effect until there is the further opportunity for public comment and a publication of the provision again as a final regulation." *Id.* § 1395hh(a)(4).

Next, the Medicare statute expressly addresses retroactivity. Any "substantive change in regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability . . . shall not be applied (by extrapolation or otherwise) retroactively to items and services furnished before the effective date of the change," *id.* § 1395hh(e)(1)(A), unless the Secretary makes one of two determinations: that "such retroactive application is necessary to comply with statutory requirements," *id.* § 1395hh(e)(1)(A)(i); or that "failure to apply the change retroactively would be contrary to the public interest," *id.* § 1395hh(e)(1)(A)(ii).

Finally, the Medicare statute prohibits any "action . . . taken against a provider of services or supplier with respect to noncompliance with such a substantive change for items and services furnished before the effective date of such a change." *Id.* § 1395hh(e)(1)(C).

### C. Rulemaking Concerning, and Litigation Over, the DSH Adjustment

"Before 2004, HHS had *not* treated Part C enrollees as 'entitled to benefits under Part A.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 939 (D.C. Cir. 2017) (quoting *Ne. Hosp. Corp.*, 657 F.3d at 15), *aff'd sub nom.*, *Azar v. Allina Health Servs.*, 587 U.S. 566 (2019) ("*Allina II*"). While HHS's regulation addressing DSH adjustments "did not specify where [Medicare Advantage] enrollees should be counted," the Secretary had a "practice" of "excluding [Part C] days from the Medicare fraction." *Ne. Hosp. Corp.*, 657 F.3d at 14, 16-17.

"In 2003, the agency proposed codifying that practice in a formal rule." *Allina Health Sys. v. Becerra*, No. 23-CV-2144, 2024 WL 4332061, at *3 (D.D.C. Sep. 27, 2024) ("*Allina IV*"); *see* Medicare Program; Proposed Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 27208 (May 19, 2003). "After the notice-and-comment period, HHS reversed course and issued a final rule . . . announcing that it would treat Part C enrollees as 'entitled to benefits under Part A.'" *Allina IV*, 2024 WL 4332061, at *3 (quoting

Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004) ("2004 Rule")). The 2004 Rule was intended to become effective on October 1, 2004. 2004 Rule, 69 Fed. Reg. at 49099.

**1. *Northeast Hospital Corp. v. Sebelius*: Challenge to Retroactive Application of the 2004 Rule**

In *Northeast Hospital Corp.*, the D.C. Circuit reviewed the Secretary's 2004 interpretation of the DSH provision under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and the Secretary's application of the 2004 Rule to a hospital's reimbursements for Fiscal Years 1999 through 2002. 657 F.3d at 2, 4-17. At *Chevron* step one, the Circuit held that the Medicare statute did not "unambiguously foreclose[] the Secretary's interpretation," *id.* at 5; instead, Congress had "left a statutory gap" for the Secretary to fill, *id.* at 13. The Circuit then sidestepped *Chevron* step two. Rather than decide whether the Secretary's interpretation was "reasonable," the Circuit concluded that the Secretary could not apply it retroactively because doing so would "contradict[] her former practice." *Id.* at 13, 16-17. In so holding, the Circuit curiously did not consider whether the Secretary's retroactive application was consistent with the Medicare statute's provision allowing for retroactive substantive changes to "regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability" in certain circumstances. 42 U.S.C. § 1395hh(e)(1)(A); *see Ne. Hosp. Corp.*, 657 F.3d at 17 ("We are aware of no statute that authorizes the Secretary to promulgate retroactive rules for DSH calculations.").

**2. *Allina I*: Challenge to Prospective Application of the 2004 Rule**

In 2010, various hospitals challenged the validity of the 2004 Rule and claimed that it had resulted in improperly low DSH adjustments for Fiscal Year 2007. *Allina Health Servs. v.*

*Sebelius*, 746 F.3d 1102, 1105, 1107 (D.C. Cir. 2014) ("*Allina I*"). The district court vacated the rule, and the D.C. Circuit affirmed, concluding that the 2004 Rule was not a "logical outgrowth" of the proposed rule—which had contemplated *excluding* patient days associated with Part C beneficiaries from the Medicare fraction and including them in the numerator of the Medicaid fraction—and thus violated the Medicare statute's notice-and-comment requirements. *Id.* at 1109-10.

### 3. *Allina II*: Challenge to FY 2012 Medicare Fraction

In 2013, in response to *Allina I*, HHS issued a new rule prospectively adopting the policy of treating Part C enrollees as "entitled to benefits under Part A." *See* Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Payment System and Fiscal Year 2014 Rates, 78 Fed. Reg. 50496, 50614 (Aug. 19, 2013) ("2013 Rule").[1] In 2014, CMS posted the Medicare fractions for Fiscal Year 2012 on its website and noted that the calculations included Part C patients. *Allina II*, 587 U.S. at 571. Some of the *Allina I* plaintiffs challenged the practice because the 2004 Rule had been vacated and the 2013 Rule was intended to only be prospective. *See id.* at 571-72. Ultimately, the Supreme Court

---

[1] In 2021, a court in this district upheld the 2013 Rule under the APA. *Fla. Health Scis. Ctr., Inc. v. Becerra*, No. 19-CV-3487, 2021 WL 2823104 (D.D.C. July 7, 2021), *appeal filed*, No. 21-5192 (D.C. Cir. Sep. 9, 2021); Am. Compl., *Fla. Health Scis. Ctr., Inc.*, No. 19-CV-3487 (D.D.C. Dec. 7, 2020), ECF No. 52 (Plaintiffs' amended complaint removing Florida Health Sciences Center as a plaintiff, leaving Allina Health System as the named plaintiff). From December 2021 through June 2025, the appeal was held in abeyance, first pending the Supreme Court's decision in *Empire Health*, 597 U.S. 424, *see* Order, *Allina Health Sys. v. Becerra*, No. 21-5192 (D.C. Cir. Dec. 8, 2021), and then pending the Supreme Court's decision in *Advocate Christ Medical Center v. Kennedy*, 605 U.S. 1 (2025), *see* Order, *Allina*, No. 21-5192 (D.C. Cir. Jan. 6, 2023); Order, *Allina*, No. 21-5192 (D.C. Cir. Aug. 2, 2024). In July 2025, the D.C. Circuit issued an order continuing to hold the appeal in abeyance pending this court's disposition of the cross-motions for summary judgment here. Order, *Allina Health Sys. v. Kennedy*, No. 21-5192 (D.C. Cir. July 28, 2025).

held that the published fractions amounted to a "statement of policy" that was subject to the Medicare statute's notice-and-comment requirements and that HHS had not identified a lawful excuse for neglecting its notice-and-comment obligations. *Id.* at 572-73, 583-84. Consequently, HHS could not rely on the published fractions.

### 4. *Allina III*: Challenge to 2015 Agency Adjudication

In late 2014, while *Allina II* was pending, HHS notified hospitals that the CMS Administrator would issue an interpretation of the statutory phrase "entitled to benefits under Part A" as it related to the DSH adjustment used to calculate payments for Fiscal Year 2007. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss, Ex. B, *Allina Health Sys. v. Burwell*, No. 16-CV-150 (D.D.C. May 4, 2016) ("*Allina III*"), ECF No. 12-2. After receiving comments, HHS issued a final administrative decision concluding that Part C enrollees must be included in the Medicare fraction. *Allina Health Servs. v. Burwell*, No. 2010-D38-R, at 24-45 (Ctrs. for Medicare & Medicaid Servs. Dec. 1, 2015).[2] The *Allina I* plaintiffs then filed *Allina III* to challenge HHS's decision to adopt this interpretation through agency adjudication rather than rulemaking. Compl. ¶¶ 1, 38, *Allina III*, No. 16-CV-150 (D.D.C. Jan. 29, 2016), ECF No. 1. After the district court denied HHS's motion to dismiss, the parties agreed to stay the case until *Allina II* was resolved. Mem. Op., *Allina III*, No. 16-CV-150 (D.D.C. Aug. 4, 2017), ECF No. 16; Aug. 17, 2017 Minute Order, *Allina III*, No. 16-CV-150. Following the Supreme Court's decision in *Allina II*, the district court remanded *Allina III* to HHS. Order, *Allina III*, No. 16-CV-150 (D.D.C. Oct. 25, 2019), ECF No. 34.

---

[2] *Available at* https://perma.cc/F7NL-JNDV.

#### 5. *Allina IV*: Premature Challenge to the 2023 Rule

After the remand in *Allina III*, HHS issued a notice of proposed rulemaking that would treat Part C enrollees as "entitled to benefits under [P]art A" in the Medicare fraction for the years before Fiscal Year 2014. *See* Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 85 Fed. Reg. 47723, 47725 (Aug. 6, 2020) (to be codified at 42 C.F.R. pt. 412) ("2023 Proposed Rule"). After the notice-and-comment period, HHS published the final rule in June 2023, with an effective date of August 8, 2023, adopting the proposed rule's interpretation that Part C beneficiaries are "entitled to benefits under Part A" for pre-2014 DSH adjustments. 2023 Rule, 88 Fed. Reg. at 37772-73.

In July 2023—the month before the 2023 Rule went into effect—a group of hospitals, including Montefiore, challenged the validity of the 2023 Rule. Compl. ¶¶ 9, 63, 67-96, *Allina IV*, No. 23-CV-2144 (D.D.C. July 24, 2023), ECF No. 1. This court dismissed the complaint for lack of subject-matter jurisdiction because the plaintiffs had not exhausted their administrative remedies. *Allina IV*, 2024 WL 4332061, at *5-8. In the court's view, the hospitals needed to receive revised NPRs calculated in accordance with the 2023 Rule and challenge them through the PRRB before bringing suit. *Id.* at *6-8.

## II. PROCEDURAL HISTORY

In April 2024, a MAC issued Montefiore a revised NPR for Fiscal Year 2006 in which it applied the 2023 Rule to include those receiving Part C benefits in the Medicare fraction and exclude them from the numerator of the Medicaid fraction. ECF No. 1 ¶ 66-67. Montefiore appealed the revised NPR to the PRRB, *id.* ¶ 67, and then filed suit in June 2024, *see id.*

Montefiore claimed that application of the 2023 Rule reduced the payment it was entitled to receive for Fiscal Year 2006 by nearly $11 million. *Id.* ¶ 66. The hospital asked the court to

declare the 2023 Rule invalid and set the rule aside. *Id.* ¶ 101. It also asked the court to direct the Secretary to recalculate its payment for Fiscal Year 2006 based on the pre-2004 policy of excluding Part C days from the Medicare fraction and to pay interest on the additional reimbursement. *Id.* The parties filed and briefed cross-motions for summary judgment, ECF Nos. 19, 21, 22, 24, 25, 28. Montefiore and other hospitals also have filed related actions challenging the 2023 Rule as applied to other revised NPRs, and the court has stayed each case pending disposition of Montefiore's first-filed challenge here. *See* ECF No. 31, at 11-12.

In September 2025, the court granted Montefiore's motion for summary judgment and denied the Secretary's cross-motion for summary judgment. ECF Nos. 31, 32. It first agreed with the Secretary that the phrase "entitled to [Part A] benefits" in 42 U.S.C. § 1395ww(d)(5)(F)(vi) is best read to cover individuals who are eligible for Part A benefits but opt to receive Part C benefits instead. ECF No. 31, at 13-25. The court also understood the Secretary's interpretation to "follow[] from the Supreme Court's interpretation of the Medicare statute" in *Empire Health* "regardless of whether *Empire Health* is mandatory or persuasive authority." *Id.* at 17. Notwithstanding the court's conclusion that the Secretary had correctly interpreted the DSH provisions, the court held that the 2023 Rule violated the APA because it was an unlawful retroactive application of a substantive change in HHS's regulations. *Id.* at 26-40. The court further determined that the 2023 Rule was arbitrary and capricious because the Secretary had failed to adequately consider commenters' arguments about the financial impact of the retroactive policy. *Id.* at 41-49. As for any remedy, the court observed that the parties had not briefed whether vacatur—which the D.C. Circuit has said is the ordinary remedy for agency action that violates Section 706(2)(A)—or remand without vacatur was warranted. *Id.* at 50. The court thus directed the parties to file supplemental briefing addressing the appropriate remedy. *Id.* at 51; ECF No. 32.

The parties have filed supplemental briefs, ECF Nos. 34, 36, 37, and the remedial issue is ripe for review.

## III. LEGAL STANDARD

Ordinarily, "'unsupported agency action . . . warrants vacatur, [but a] court is not without discretion' to leave agency action in place while the decision is remanded for further explanation." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1051 (D.C. Cir. 2021) (second alteration in original) (quoting *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005)). The D.C. Circuit follows a two-prong test "governing that exercise of discretion: 'The decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Id.* (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

## IV. DISCUSSION

When the court called for supplemental briefing on the appropriate remedy, it anticipated that the parties would dispute whether remand with or without vacatur is appropriate under the two *Allied-Signal* factors. ECF No. 31, at 51. Montefiore largely did as the court expected, arguing that vacatur was warranted because of "fundamental flaws" in the rule, ECF No. 34, at 1; *see id.* at 2-6, and because vacatur would not cause "disruptive consequences," *id.* at 6 (quoting *Allied-Signal*, 988 F.2d at 150); *see id.* at 6-7. But the hospital went a step further, arguing that the court should *also* remand with specific instructions to "direct recalculation of [its] DSH payment, with interest, using the pre-2004 policy" of excluding Medicare Part C days in the Medicare fraction. ECF No. 34, at 1; *see* ECF No. 1 ¶ 101 (Montefiore's complaint seeking the

same relief); ECF No. 36, at 3 (the Secretary's acknowledgement that, before 2004, HHS's "practice . . . was to exclude Part C days from . . . the Medicare fraction when calculating the DSH adjustment" (alterations in original) (quoting 2023 Rule, 88 Fed. Reg. at 37783)). For his part, the Secretary ignores the *Allied-Signal* inquiry altogether. *See generally* ECF No. 36. He instead argues that vacatur is an unlawful remedy under the APA and asks the court to remand the matter to HHS with only a "party-specific declaration that the challenged rule is unlawful." *Id.* at 11. The Secretary also opposes Montefiore's request for a remedial order directing HHS to recalculate the hospital's DSH payment for Fiscal Year 2006 in accordance with the pre-2004 policy. *Id.* at 2-8.

The court concludes that binding precedent forecloses the Secretary's frontline position on the permissibility of vacating agency action under the APA and, without any argument from the Secretary about the *Allied-Signal* factors, it concludes vacatur of the 2023 Rule is warranted. However, the court agrees with the Secretary that the remand order should not direct HHS to make any specific payment to Montefiore for Fiscal Year 2006.

### A. Universal Vacatur Under the APA

The Secretary maintains that the APA "does not authorize vacatur or a departure from traditional principles of equity, which limit courts to party-specific relief tailored to the legal violation." *Id.* at 8. He "acknowledge[s]" that the D.C. Circuit has rejected his position, but "respectfully note[s] that that holding is mistaken." *Id.* Montefiore correctly asserts that this court must follow the law of the D.C. Circuit, which unequivocally provides that vacatur is the standard remedy when a court sets aside an agency rule unless the *Allied-Signal* inquiry counsels otherwise. ECF No. 37, at 1-2. Because the Secretary does not argue that remand without vacatur is warranted

under *Allied-Signal*, ECF No. 36, at 11, the court vacates the 2023 Rule and remands this case to HHS for further proceedings consistent with the summary-judgment opinion.

The APA directs a reviewing court to "hold unlawful and set aside agency action . . . found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In the D.C. Circuit's view, to "'set aside' a rule is to vacate it." *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024) (quoting *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J., concurring)). Accordingly, for more than fifty years, the D.C. Circuit has vacated agency actions, or affirmed the vacatur of agency actions, that fail to comply with Section 706(2)(A)'s demand for reasoned and lawful decisionmaking. *See, e.g.*, *Nat'l Tire Dealers & Retreaders Ass'n, Inc. v. Brinegar*, 491 F.2d 31, 37, 41 (D.C. Cir. 1974); *Tabor v. Joint Bd. for Enrollment of Actuaries*, 566 F.2d 705, 709-12 (D.C. Cir. 1977); *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854-55 (D.C. Cir. 1987); *Advocs. for Highway & Auto Safety v. Fed. Highway Admin.*, 28 F.3d 1288, 1294 (D.C. Cir. 1994); *Comcast Corp. v. Fed. Commc'ns Comm'n*, 579 F.3d 1, 8-10 (D.C. Cir. 2009); *Ctr. for Biological Diversity v. Env't Prot. Agency*, 722 F.3d 401, 408-12 (D.C. Cir. 2013); *Cboe Futures Exch., LLC v. Sec. & Exch. Comm'n*, 77 F.4th 971, 981-82 (D.C. Cir. 2023).

The Supreme Court has similarly held that an unlawful agency action must be vacated. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 9 (2020) ("[W]e conclude that the Acting Secretary did violate the APA, and that the [policy] must be vacated."). If binding D.C. Circuit precedent and the Supreme Court's vacatur of agency action were not enough, the court further observes that a majority of the current Justices appear to have endorsed the D.C. Circuit's view. *See Corner Post*, 603 U.S. at 829-43 (Kavanaugh, J., concurring) (explaining why the APA's directive that courts "set aside" unlawful agency action authorizes vacatur); *Nat'l*

*Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2662-63 (2025) (Roberts, C.J., concurring in part and dissenting in part) (joined by Sotomayor, Kagan, and Jackson, JJ., and explaining that "the District Court's vacatur of the challenged directives" under Section 706(2)(A) "falls well within the scope of the District Court's jurisdiction under the [APA]"). *But see United States v. Texas*, 599 U.S. 670, 693-704 (2023) (Gorsuch, J., concurring) (joined by Thomas and Barrett, JJ., and explaining why the APA does not allow a court to vacate an agency action).

Vacatur is not simply a permissible remedy, it is the "normal" one "[w]hen an agency's action is unlawful." *Ctr. for Biological Diversity v. Zeldin*, 171 F.4th 356, 382 (D.C. Cir. 2026) (quoting *Allina I*, 746 F.3d at 1110). A court may "remand *without* vacating the agency's action" only in the "limited" and "exceptional" circumstance when the *Allied-Signal* factors favor that remedy—the very argument that the Secretary has affirmatively declined to advance here. *Id.* (emphasis added) (quoting *Am. Great Lakes Ports Ass'n v. Shultz*, 962 F.3d 510, 518-19 (D.C. Cir. 2020)); *see* ECF No. 34, at 11. This court has no authority to depart from D.C. Circuit precedent and hold that the APA prohibits vacatur. *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule[s] it."); *see Slaughter v. Trump*, 791 F. Supp. 3d 1, 14-17 (D.D.C. 2025) (explaining that "it would be an act of judicial hubris" for this court to "prematurely" overrule binding precedent), *rev'd*, 146 S. Ct. 2283 (2026).

The Secretary advances the related argument that "even if vacatur were a permissible remedy under the APA," "ordinary equitable principles" require the court to grant Montefiore "party-specific" relief. ECF No. 36, at 10-11. Specifically, he maintains that "[r]emedies 'ordinarily operate with respect to specific parties,' rather than 'on legal rules in the abstract.'" *Id.*

at 10 (quoting *California v. Texas*, 593 U.S. 659, 672 (2021)). The Secretary also points to the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), in which the Court held that so-called "'universal injunctions'"—when a "district court[] assert[s] the power to prohibit enforcement of a law or policy against *anyone*"—"likely exceed the equitable authority that Congress has granted to federal courts," *id.* at 837; *see* ECF No. 36, at 10-11.

D.C. Circuit precedent also forecloses the Secretary's alternative position.[3] In *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998), the Circuit considered a challenge to an agency rule addressing permits for dredging on wetlands. The district court had granted summary judgment to the plaintiffs, declared the rule invalid, and set it aside. *Am. Mining Cong. v. U.S. Army Corps of Eng'rs*, 951 F. Supp. 267, 278 (D.D.C. 1997). On appeal, the D.C. Circuit affirmed, holding that the rule exceeded the agency's statutory mandate. *Nat'l Mining Ass'n*, 145 F.3d at 1403-08. It also rejected the U.S. Army Corps of Engineers and Environmental Protection Agency's challenge that the "district court erred by granting nationwide relief to plaintiffs and non-parties alike." *Id.* at 1408. In doing so, the D.C. Circuit explained that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Id.* at 1409 (alteration in original) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21

---

[3] Although the Secretary asserts that party-specific relief is required "even if vacatur were a permissible remedy," ECF No. 36, at 10, his understanding of what "party-specific" means is incompatible with the effect that setting aside an unlawful agency action has. "[T]he scope of relief under the APA is not party-restricted." *Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 105 (D.D.C. 2025), *appeal dismissed per stipulation*, No. 25-5340, 2025 WL 3635881 (D.C. Cir. Dec. 15, 2025). Section 706 specifies what the court is "authorized to do with respect to *agency actions*, not parties." *Id.* at 106. In any event, the Secretary has "failed to identify any plausible manner in which the Court could set the [2023 Rule] aside as to [Montefiore], while leaving it in place as to all others." *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 105 (D.D.C. 2025), *aff'd*, 174 F.4th 81 (D.C. Cir. 2026).

(D.C. Cir. 1989)).[4] Binding precedent therefore contemplates that vacating unlawful agency action affects nonparties.

Nothing in the Supreme Court's *CASA* decision casts doubt on the D.C. Circuit's practice of vacating an unlawful rule under the APA unless, under *Allied-Signal*, remand without vacatur is appropriate. *See Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) (statement of Millet and Childs, JJ.) (explaining in a nonprecedential per curiam order that the D.C. Circuit's language in *Harmon* concerning the effect of vacatur on nonparties remains "binding precedent" post-*CASA*).[5] In *CASA*, the Court expressly noted that its holding about universal injunctions did not "resolve[] the distinct question whether the [APA] authorizes federal courts to vacate federal agency action." 606 U.S. at 847. And, following *CASA*, the

---

[4] As the D.C. Circuit recognized, its position on the effect that APA set-aside relief may have on nonparties was consistent with both the majority and dissenting views in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). There, the Supreme Court considered a challenge to the Bureau of Land Management's "land withdrawal review program" and held that two individuals' affidavits were insufficient to satisfy the requirement that an individual must be "adversely affected or aggrieved by agency action" to bring an APA claim. 497 U.S. at 882 (quoting 5 U.S.C. § 702). The Court further held that four additional affidavits from the plaintiff organization's members would not enable the organization to "challenge the entirety of [the] so-called 'land withdrawal review program.'" *Id.* at 890. That program was "not an identifiable 'final agency action' for purposes of the APA" because it referred to more than a thousand agency determinations of individual "withdrawal revocation applications." *Id.* at 890 & n.2. But, as the majority conceded, any "specific order or regulation . . . [could] of course be challenged under the APA by a person adversely affected—and the entire 'land withdrawal review program,' insofar as the content of that particular action is concerned, would thereby be affected." *Id.* at 890 n.2. The Court's dissenting justices agreed with the majority on this point, explaining that "a single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief [under the APA] that affects the rights of parties not before the court." *Id.* at 913 (Blackmun, J., dissenting).

[5] In *Make the Road New York*, the D.C. Circuit further noted that "[w]hen the government first previewed its theory of plaintiff-specific relief under the APA at oral argument in *United States v. Texas*, 599 U.S. 670 (2023), Chief Justice Roberts exclaimed 'Wow' before noting that the government's position would undermine 'what the D.C. Circuit and other courts of appeals have been doing all the time as a staple of their decision output[,]' which decisions the Supreme Court has upheld 'over and over and over again.'" 2025 WL 3563313, at *36 (quoting Tr. of Oral Arg. at 36, 38, *Texas*, 599 U.S. 670 (No. 22-58)).

D.C. Circuit subsequently affirmed an order vacating an agency's guidance. *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 174 F.4th 81, 117-20 (D.C. Cir. 2026).

The courts in this district that have considered the issue have also unanimously determined that *CASA* "does not extend to APA relief aimed at agency action." *Coal. for Indep. Tech. Rsch. v. Rubio*, No. 26-CV-815, 2026 WL 2030770, at *25 (D.D.C. July 14, 2026); *see Robert F. Kennedy Ctr. for Just. & Hum. Rts. v. McMahon*, No. 25-CV-3860, 2026 WL 1893511, at *9 & n.4 (D.D.C. June 30, 2026) (rejecting the government's argument that *CASA* limits APA relief and vacating an agency's rule); *Am. Ass'n of Nurse Practitioners v. McMahon*, No. 26-1780, 2026 WL 1826176, at *21-22 (D.D.C. June 24, 2026) (preliminarily setting aside an agency's rule under Section 705 after concluding that *CASA* did not affect the court's remedial analysis);[6] *Or. Env't Council v. Internal Revenue Serv.*, No. 25-CV-4400, 2026 WL 1631612, at *26-28 (D.D.C. June 6, 2026) (vacating an agency notice under Section 706(2)(A) because "binding precedent in this Circuit recognizes that universal vacatur of unlawful agency actions is an available remedy under the APA"); *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 26-37 (D.D.C. 2026) (noting that *CASA* does not "affect the availability of vacatur" under the APA and vacating agency action), *appeal docketed*, No. 26-5087 (D.C. Cir. Mar. 20, 2026); *Albany Med Health Sys. v. Health Res. & Servs. Admin.*, No. 23-CV-3252, 2026 WL 592593, at *10 (D.D.C. Mar. 3, 2026) (vacating an agency notice because "Circuit precedent is clear that 'vacatur is the normal remedy' for an APA violation, and the Supreme Court's recent decision in *Trump v. CASA* did nothing to

---

[6] Section 705 permits a court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. To evaluate *CASA*'s effect on precedent concerning APA vacatur, the court has considered cases in which courts have "preliminarily 'set aside'" or stayed a new agency action under Section 705, *CASA*, 606 U.S. at 869 (Kavanaugh J., concurring) (quoting 5 U.S.C. § 706(2)), or set aside such action when entering final judgment under Section 706.

disturb it" (quoting *Allina I*, 746 F.3d at 1110)), *appeal docketed*, No. 26-5147 (D.C. Cir. Apr. 30, 2026); *Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*, 804 F. Supp. 3d 45, 69-70 (D.D.C. 2025) (concluding that, in the wake of *CASA*, the court still "has the authority" to set aside agency action under the APA); *Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 105-07 (D.D.C. 2025) (rejecting an agency's remedial argument based on "traditional equitable principles" and preliminarily staying the challenged action under Section 705); *Drs. for Am. v. Off. of Pers. Mgmt.*, 793 F. Supp. 3d 112, 148 n.17 (D.D.C. 2025) (explaining that because the case "involv[ed] APA vacatur, not a universal or national injunction, the Supreme Court's recent decision in [*CASA*] d[id] not apply"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 103 (D.D.C. 2025) (holding that D.C. Circuit precedent remained binding following *CASA*), *aff'd*, 174 F.4th 81 (D.C. Cir. 2026).

In sum, this court cannot endorse the Secretary's view and refuse to vacate the 2023 Rule on the theory that the APA and equitable principles prohibit vacatur. Contrary to the Secretary's assertion, D.C. Circuit precedent and persuasive decisions from courts in this district have "meaningfully grapple[d]" with the APA's command that a reviewing court "'hold unlawful and set aside agency action.'" ECF No. 36, at 9 (quoting 5 U.S.C. § 706(2)(A)). Accordingly, the court will vacate the 2023 Rule.

**B. Instructions on Remand**

The parties also disagree whether the court, in its remand order, should instruct the Secretary to "recalculate [Montefiore's] DSH payment by applying the pre-2004 policy" of excluding Part C days in the DSH fractions and to "pay[] litigation interest" under 42 U.S.C. § 1395oo(f)(2). ECF No. 34, at 7. Montefiore asserts that detailed instructions are warranted for two reasons: first, the Secretary has "no viable path" under the Medicare statute to include Part C

days in the Medicare fraction and exclude those days from the numerator of the Medicaid fraction for Fiscal Year 2006, *id.* at 7-9; second, "vacatur alone" is insufficient because the Secretary has repeatedly "refuse[d] to apply the reinstated pre-2004 policy despite . . . decades of losses" in litigation over this issue, *id.* at 9-11. In response, the Secretary maintains that, after remand, he may still adopt the statutory interpretation set forth in the 2023 Rule without violating the APA. ECF No. 36, at 5-7. He also disputes Montefiore's characterization of earlier HHS efforts to change its Part C policy in response to litigation. *Id.* at 7-8. The court agrees with the Secretary on both fronts. Specific directives would be inappropriate because the Secretary may consider other ways to adopt an interpretation that requires MACs to include Part C days in the Medicare fraction and exclude them from the numerator of the Medicaid fraction. And the Secretary's responses to DSH-related litigation over two decades do not evidence any "disregard" for "prior judicial rulings." ECF No. 37, at 5.

**1. The Secretary's available options**

Montefiore contends that the 2023 Rule "was the last arrow left in the agency's quiver," which warrants specific instructions on remand. ECF No. 34, at 9; *see* ECF No. 37, at 2-7. Central to the parties' dispute over the Secretary's options on remand is a disagreement over the scope of the court's retroactivity holding in the summary-judgment opinion. The Secretary believes that he can adopt the 2023 Rule's interpretation in one of two ways: first, by avoiding rulemaking altogether, because the court "did not address" whether "rulemaking is necessary" if the Secretary thinks that his interpretation of the DSH provision is unambiguously correct and there is no "*Chevron*-style" gap to fill, ECF No. 36, at 5-6; and second, by relying exclusively on *Empire Health*, because the court "did not resolve" whether the Secretary can adopt the same interpretation from the 2023 Rule solely on the theory that *Empire Health* is binding precedent, *id.* at 6.

Montefiore insists that both paths are foreclosed by this court's retroactivity holding. As for avoiding rulemaking, Montefiore asserts that "this very option 'was before th[is] Court'" on summary judgment and "the Court rejected it," ECF No. 37, at 2 (alteration in original) (quoting *Allina I*, 746 F.3d at 1111),[7] by explaining that "even if notice and comment were not necessary, the Medicare statute's retroactivity provision would still apply," *id.* at 3 (quoting ECF No. 31, at 30). As for the *Empire Health* argument, Montefiore points to the court's conclusion that the Medicare statute's retroactivity provision applies even when the Secretary is adopting an interpretation that comports with the statute's "single, best meaning." *Loper Bright*, 603 U.S. at 400; *see* ECF No. 37, at 3-5; *see also* ECF No. 31, at 29-31. Montefiore takes that conclusion to mean that the Secretary is foreclosed from arguing on remand that retroactive application of the *Empire Health* Court's interpretation of the phase "entitled to [Medicare Part A] benefits," 597

[7] Montefiore misquotes *Allina I*. There, the D.C. Circuit explained that the district court *erred* by "order[ing] the Secretary to recalculate the hospitals' reimbursements" using the pre-2004 policy because the "question whether the Secretary could reach the same result through adjudication *was not before the district court*." *Allina I*, 746 F.3d at 1111 (emphasis added). Selectively omitting the "not" from *Allina I* implies that the Circuit reached the opposite conclusion than it did. The D.C. Circuit did not address whether changing HHS's Part C policy through adjudication complied with the Section 1395hh(a)(2) notice-and-comment requirement until the *Allina II* litigation. There, the D.C. Circuit held that "HHS could not circumvent [notice and comment] by claiming that it was acting by way of adjudication rather than rulemaking." *Allina Health Servs.*, 863 F.3d at 945. The Secretary has not advanced the argument here, *see generally* ECF No. 36, but the Circuit neither addressed nor resolved whether adjudication would be permissible when the statute itself sets the relevant "substantive legal standard," 42 U.S.C. § 1395hh(a)(2), which is a corollary of the question the Supreme Court reserved in *Allina II*—whether notice and comment is required when a statute contains no gaps for the Secretary to fill, 587 U.S. at 583-84 (leaving open the possibility that the government could argue that it had not established or changed a substantive legal standard under Section 1395hh(a)(2) "because the *statute* itself required it to count Part C patients in the Medicare fraction"). This court observes only that even if adjudication is permissible, the Medicare statute's retroactivity provision has force whenever a "substantive change in regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability" is "*applied*." 42 U.S.C. § 1395hh(e)(1)(A) (emphasis added).

U.S. at 432 (alteration in original) (quoting 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)-(II)), is "necessary to comply with the statutory requirements," 42 U.S.C. § 1395hh(e)(1)(A).

The Secretary has the better arguments. To begin, Montefiore's logic collapses an important distinction in the court's retroactivity analysis. In his summary-judgment briefing, the Secretary argued that, in light of *Allina II*, notice-and-comment procedures are unnecessary when he is not engaged in gap-filling, *see* ECF No. 31, at 29-31, and that *Loper Bright* made "'such questions' about retroactivity 'no longer particularly relevant,'" *see id.* at 27-29 (quoting ECF No. 22, at 20). The bottom line of both arguments was that the 2023 Rule "*cannot* be retroactive if the statute *requires* including Part C days in the Medicare fraction and excluding them in the numerator of the Medicaid fraction." *Id.* at 26 (emphasis added). Montefiore correctly notes that the court considered and rejected both claims, ECF No. 37, at 2-5; *see* ECF No. 31, at 26-31, but it overstates the import of the court's conclusion. The court held only that neither *Allina II* nor *Loper Bright* supplants the Medicare statute's retroactivity provision; that is, even when the Secretary settles on an interpretation without relying on his discretion to fill a statutory gap—and a court subsequently agrees that his interpretation is the provision's "single, best meaning," *Loper Bright*, 603 U.S. at 400—he still must satisfy Section 1395hh(e)(1)(A), *see* ECF No. 31, at 26-31. That provision allows the Secretary to retroactively apply a substantive change in "regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability" if doing so is "necessary to comply with the statutory requirements" or if the failure to do so is "contrary to the public interest." 42 U.S.C. § 1395hh(e)(1)(A)(i), (ii). Once the court held that the retroactivity provision was triggered, it considered whether the 2023 Rule could be sustained under either subsection. ECF No. 31, at 31-40. In short, by focusing on the court's resolution of the threshold question (whether the 2023 Rule *is* retroactive), Montefiore misses the

second-order one (whether the 2023 Rule is *impermissibly* retroactive). Just because the court concluded that the Medicare statute's retroactivity provision applies when a statute requires a change in the Secretary's interpretation does not mean that "rulemaking and adjudication to apply the new statutory interpretation retroactively are off the table." ECF No. 37, at 9. Following remand, the Secretary may consider any new action that complies with Section 1395hh(e)(1)(A).

The Secretary thus correctly understands the court's retroactivity holding, meaning that the two paths forward he has identified may be viable.[8] This case presented two narrow retroactivity questions on summary judgment: first, whether the "substantive change" in HHS' "regulations" set in motion by the 2023 Rule was retroactive at all, 42 U.S.C. § 1395hh(e)(1)(A); *see* ECF No. 31, at 26-31; 88 Fed. Reg. at 37785 (conceding that the 2023 Rule "effects a 'substantive change' to the DSH regulations"); and second, to the extent the 2023 Rule was retroactive, whether that retroactivity violated Section 1395hh(e)(1)(A), *see* ECF No. 31, at 31-40. The court answered both questions in the affirmative. ECF No. 31, at 26-40. But Montefiore challenged only the 2023 Rule, ECF No. 1 ¶¶ 72-100, which the Secretary issued after notice and comment, 2023 Rule, 88 Fed. Reg. at 37772 (explaining HHS's "proposed rule" and the "approximately 110 timely pieces of correspondence containing multiple comments" that the agency received). The Secretary's authority to adopt the 2023 Rule's interpretation of the phrase "entitled to benefits under Part A" *without* notice-and-comment rulemaking was therefore not at issue. *See* ECF No. 31, at 30 (explaining that "*Allina II* expressly leaves open the question whether notice and

---

[8] The court underscores that it takes no position on the lawfulness of any hypothetical "appli[cation]" of a "substantive change in regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability." 42 U.S.C. § 1395hh(e)(1)(A). Instead, the court simply determines that neither of the Secretary's proposed approaches defies the court's conclusions in the summary-judgment opinion.

comment is required" if "the Medicare statute is best read to require the Secretary to include Part C patients in the Medicare fraction"); *cf. Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam) ("Because courts are 'essentially passive instruments of government,' [they] rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020))). Nothing in the court's opinion can be read to decide the legality of an agency action that Montefiore has not challenged. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (explaining that federal courts cannot render opinions "advising what the law would be upon a hypothetical state of facts" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937))).

The Secretary may also consider whether *Empire Health* alone requires him to retroactively apply the interpretation adopted in the 2023 Rule. The court's retroactivity analysis cannot be understood to preemptively foreclose that approach because it was not the justification offered for the 2023 Rule.[9] Instead, the Secretary premised the 2023 Rule on the following: (1) although *Empire Health* "did *not* address specifically whether Part C enrollees remain 'entitled to Part A,'" the statutory provision defining the DSH fractions nonetheless "requires the Secretary to count Part C days in the Medicare fraction"; (2) to the extent any statutory gap exists, retroactive application is necessary "to comply with the statutory requirement to make DSH payments," because HHS had no prior "policy to govern" Part C days; and (3) the failure to retroactively apply this policy for Part C days would be contrary to the public interest. 88 Fed. Reg. at 37774-75 (emphasis added). The court could not have upheld the 2023 Rule on the ground that *Empire Health* alone requires retroactive application of the rule's interpretation of the DSH fraction

[9] Nor did the court purport to decide whether *Empire Health* was "mandatory or persuasive authority." ECF No. 31, at 17.

provisions because that was not one of the agency's rationales. *See Window Covering Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 82 F.4th 1273, 1289 (D.C. Cir. 2023) ("[I]t is not [the court's] role to 'supply a reasoned basis for the agency's action that the agency itself has not given.'" (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974))); *NTCH, Inc. v. Fed. Commc'ns Comm'n*, 841 F.3d 497, 506 (D.C. Cir. 2016) (explaining that a challenged action rises or falls on the agency's "rationale at the time of the decision" (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990))).

Montefiore maintains that the Secretary "raised this same" *Empire Health* "argument" in both his summary-judgment briefing and the 2023 Rule. ECF No. 37, at 3 (emphasis omitted). While the Secretary pressed that claim in his briefing, *see* ECF No. 31, at 14 (explaining that the "parties dispute whether *Empire Health* governs this case"), his decision to do so is irrelevant because a rule subject to an APA challenge can be sustained only on the rationale that the agency offered when it issued the regulation, *Window Covering Mfrs. Ass'n*, 82 F.4th at 1289; *NTCH*, 841 F.3d at 506. And Montefiore's suggestion that the 2023 Rule offered the same justification that the Secretary wants to consider after remand is unfounded. To be sure, the Secretary responded to a comment insisting that the Medicare statute "unambiguously forecloses" his position on Part C days by asserting that "the opposite is true[] based on" *Empire Health*, which suggested that "the statute itself requires [him] to count Part C days in the Medicare fraction." 88 Fed. Reg. at 37775. Elsewhere, however, he explained that *Empire Health*'s "reasoning supports [his] interpretation," not that the Supreme Court's interpretation of a different statutory provision was binding on him with respect to the one concerning the Medicare and Medicaid fractions. *Id.* at 37777; *see* 88 Fed. Reg. at 37774-75 (explaining that *Empire Health* "did not address specifically whether Part C enrollees remain 'entitled to Part A'").

What is more, the rest of the Secretary's response to the comment clarifies that the 2023 Rule was not promulgated because *Empire Health* binds HHS to retroactively apply any particular Part C policy. The Secretary instead believed that *Empire Health* made retroactivity irrelevant. First, he asserted that his rule "simply reflects the 'substantive legal standard' already set forth in the statute," which would not "trigger [his] notice-and-comment obligations." *Id.* at 37775 (quoting 42 U.S.C. § 1395hh(a)(2)). Second, the Secretary explained that if the "statute itself establishes the applicable 'substantive legal standard,'" there is no "resulting need to rely on the retroactive rulemaking authority." *Id.* (quoting 42 U.S.C. § 1395hh(a)(2)); *see id.* at 37776 (explaining the agency's position that if *Empire Health* "has now held that our interpretation of the statute reflects its clear meaning, we need not rely on retroactive rulemaking authority"); *id.* at 37777 (explaining that "retroactive rulemaking is required" "unless the statute itself establishes the substantive legal standard"). Indeed, as for the second explanation—that retroactive application of a regulation is unnecessary if *Empire Health* compels the Part C policy at issue—the Secretary expressly disclaimed that argument in the 2023 Rule, even though Montefiore now contends he relied on it. The Secretary stated in the rule that his "determination that retroactive rulemaking is necessary to comply with statutory requirements is *not* based on the view that the statute admits of only one interpretation of 'entitled to benefits under part A,'"; "[r]ather, the basis of the determination is that the statute requires the Secretary to make DSH adjustments, which in turn requires him" to interpret the DSH provision. *Id.* at 37777 (emphasis added).

The court rejected both arguments. ECF No. 31, at 26-31. And the court has explained that regardless of whether notice-and-comment rulemaking is necessary or whether the Secretary's interpretation comports with the statute's best meaning, the Medicare statute's retroactivity provision applies. *Id.* at 31-40; *see supra* pp. 20-22. Advancing one of those same two rationales

after remand would flout this court's ruling, but the Secretary may consider whether D.C. Circuit precedent requires "retroactive application of a judicial decision," ECF No. 36, at 6 (quoting *Nat'l Gas Fuel Supply Corp. v. Fed. Energy Regul. Comm'n*, 59 F.3d 1281, 1289 (D.C. Cir. 1995)), so long as such application is consistent with Section 1395hh(e)(1)(A).

Although the Secretary focuses on avoiding rulemaking altogether and relying on the retroactive application of a prior judicial decision, ECF No. 36, at 5-7, he may also contemplate adopting a new "substantive change in regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability," 42 U.S.C. § 1395hh(e)(1)(A), that meets either the "necessary to comply" or the "public interest" allowance for retroactivity. Indeed, the court has analyzed only the justifications for those allowances set forth in the 2023 Rule. ECF No. 31, at 31-40. The Secretary's "necessary to comply" rationale was that retroactive application was necessary at least in part because, without the 2023 Rule, HHS had *no* policy to calculate DSH payments. 88 Fed. Reg. at 37776 ("[A]s to necessity to comply with statutory requirements, there will not always be, as there is here, a statutory directive to calculate payments that demands an interpretation of the very statutory provision interpreted in the vacated rule *coupled with the absence of a prior rule addressing the issue* that needs to be resolved." (emphasis added)); *see* ECF No. 31, at 32-36 (rejecting that argument). And he limited his "public interest" rationale to his need to fill any statutory gap. The court rejected this justification as irrelevant in light of his statutory analysis *and* because he failed to adequately explain his retroactivity determination. ECF No. 31, at 33 n.9, 36-40; *see id.* at 40-49 (holding that the 2023 Rule is arbitrary and capricious with respect to its discussion of the rule's "financial impact on regulated parties," which overlaps with the court's conclusion on the "public interest" exception that the Secretary did not "grapple with the costs of imposing [the rule's] requirement retroactively"). Nothing in the court's opinion

should be construed to prohibit the Secretary from taking new action that complies with the APA and the Medicare statute's retroactivity provision. *See Ctr. for Sci. in the Pub. Int. v. Regan*, 727 F.2d 1161, 1164 (D.C. Cir. 1984) ("[I]t is not improper for an agency to engage in new rulemaking to supersede defective rulemaking."); *cf. City of Billings v. Transp. Sec. Admin.*, 153 F.4th 46, 54 (D.C. Cir. 2025) (requiring the agency to "adopt a procedurally sound rule" after remand).

In sum, Montefiore is incorrect to contend that "there are no other options for the agency to try on remand." ECF No. 37, at 6. The Secretary has identified at least two options he may pursue. The court takes no position on the lawfulness of those potential actions other than to observe that they are not foreclosed by its summary-judgment decision or the other cases involving challenges to the Secretary's Part C policy. Specific remand instructions thus cannot be justified on the theory that the Secretary has only "one lawful option available on remand." *Id.* at 2.

**2. The Secretary's compliance with court orders**

Montefiore fares no better with its second argument—that directing the Secretary to recalculate the DSH fractions in accordance with HHS's pre-2004 policy is necessary because HHS has previously "refus[ed] to accept previous binding court rulings." ECF No. 34, at 9. The court appreciates Montefiore's concern about the protracted dispute between HHS and various hospitals challenging their pre-2013 DSH payments. But this is not the "rare case[] of an agency's persistent failure to explain itself," so a "remand . . . with instructions" would be unwarranted. *Checkosky v. Sec. & Exch. Comm'n*, 139 F.3d 221, 222 (D.C. Cir. 1998).

"Only in extraordinary circumstances do [courts] issue detailed remedial orders." *Baptist Med. Ctr. v. Sebelius*, 855 F. Supp. 2d 1, 3 (D.D.C. 2012) (alteration in original) (quoting *N.C. Fisheries Ass'n, Inc. v. Guttierez*, 550 F.3d 16, 20 (D.C. Cir. 2008)). The litigation history and various agency actions that Montefiore identifies, while undoubtedly frustrating, do not justify

deviating from the "ordinary 'remand' rule," *Est. of Insinga v. Comm'r of Internal Revenue*, 149 F.4th 709, 719 (D.C. Cir. 2025) (quoting *Immigr. & Naturalization Serv. v. Orlando Ventura*, 537 U.S. 12, 18 (2002)), according to which "'the function of the reviewing court ends when an error of law is laid bare[,]' and '[a]t that point the matter once more goes to the [agency] for reconsideration,'" *id.* (alterations in original) (quoting *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952)). Montefiore points to HHS's several failed efforts to implement a new policy for Part C days: first, the 2004 Rule, which the D.C. Circuit vacated in *Allina I*, 746 F.3d at 1109-10; second, the publication of Medicare fractions on an agency website, which the Supreme Court rejected in *Allina II*, 587 U.S. at 572-84; and third, the 2023 Rule, which this court has concluded must be vacated, *see supra* Section IV.A; *see also* ECF No. 31. *See* ECF No. 34, at 8-9; ECF No. 37, at 2-3. The court is unpersuaded.

The regulatory history does not demonstrate HHS's "repeated[] fail[ure]" or "refus[al]" to "change its approach on remand." ECF No. 34, at 9. After the Supreme Court held in *Allina II* that notice and comment are required "when the government establishes or changes an avowedly 'gap'-filling policy," 587 U.S. at 583-84, the Secretary followed that instruction by conducting notice and comment for the 2023 Rule. 88 Fed. Reg. at 37772. And, notwithstanding the 2023 Rule's defects, *see* ECF No. 31, at 26-49, the Secretary adopted the correct statutory interpretation, *id.* at 13-25. The Secretary also retains several potentially lawful avenues to adopt the 2023 Rule's statutory interpretation while adhering to Section 1395hh's procedural requirements. *See supra* Section IV.B.1. Both the Secretary's good-faith efforts to calculate the DSH fractions and the different ways that Section 1395hh allows him to do so make this case unlike those that Montefiore has cited. *See, e.g.*, *Nat'l Ass'n of Regul. Util. Comm'rs v. U.S. Dep't of Energy*, 736 F.3d 517, 518-21 (D.C. Cir. 2013) (rejecting the government's request for a remand

so that the Secretary of Energy could reconsider his "statutory obligation to determine annually the adequacy of [a required] fee" and concluding that the request was "so obviously disingenuous that [the court had] no confidence that another remand would serve any purpose"); *Greyhound Corp. v. Interstate Com. Comm'n*, 668 F.2d 1354, 1356-61, 1364 (D.C. Cir. 1981) (remanding a case to the agency with directions to release the regulated entity from the agency's jurisdiction after the agency had arrived "at substantially the same conclusion" the D.C. Circuit had previously rejected).

Nor is this case like *Checkosky*, in which the D.C. Circuit held that the "extraordinary" remand-with-instructions remedy was warranted because a Securities and Exchange Commission disciplinary proceeding involving two accountants had been ongoing "for more than ten years." 139 F.3d at 226-27. Although roughly twenty years of litigation have unfolded over different aspects of HHS's Part C policy, the agency has tried to adhere to a unique statutory scheme. *See Allina II*, 587 U.S. at 572-73 (noting that the notice-and-comment provision contains a phrase—"substantive legal standard"—that "doesn't seem to appear anywhere else in the entire United States Code"); ECF No. 31, at 37-38 (explaining that no court appears to have interpreted Section 1395hh(e)(1)(A)(ii)'s "public interest exception"). Additionally, HHS has done so while interpreting judicial opinions that either expressly or impliedly suggest that other approaches might comply with the Medicare statute's procedural requirements. *See, e.g.*, *Allina II*, 587 U.S. at 583-84 (declining to consider whether the Secretary could argue that notice and comment were unnecessary because the statute itself sets the relevant legal standard); *Allina I*, 746 F.3d at 1111 (noting that the question "whether the Secretary could reach the same result through adjudication was not before the district court"); *Allina Health Servs.*, 863 F.3d at 945 (reviewing the Secretary's decision to issue a rule without notice and comment following a Circuit decision holding that an

earlier rule was not a logical outgrowth under Section 1395hh(a)(4) and explaining that the Secretary cannot avoid notice and comment by pursuing the policy through adjudication instead). While Montefiore has waited for twenty years to receive a DSH payment for Fiscal Year 2006, the current dispute over the 2023 Rule's application to the revised 2006 NPR is less than three years old. *See* ECF No. 1 ¶ 66-67.

Against this backdrop, Montefiore's challenge does not present the extraordinary situation that would justify a remand with specific instructions for how to recalculate the hospital's 2006 DSH payment. Vacatur without further instructions is warranted.

## V. CONCLUSION

For the foregoing reasons, the court will vacate the 2023 Rule and remand the case to the Secretary for further proceedings consistent with this opinion and the court's opinion resolving the parties' cross-motions for summary judgment. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: August 28, 2026